BARBRA *v.* BARBRA.

(*Knoxville*, September Term, 1936.)

Opinion filed November 21, 1936.

KRAMER & MORTON, of Maryville, for complainant.

CHAS. C. GUINN, of Benton, for defendant.

MR. SPECIAL JUSTICE DAVIS delivered the opinion of the Court.

The complainant, a *non compos mentis*, through her next friend, filed this bill to impeach, for fraud, a divorce decree which the defendant obtained on October 23, 1934. There was a demurrer by the defendant, on the ground that, under Code, section 9039, an appeal is the only

method of reviewing errors in divorce cases. The chancellor overruled this demurrer, but permitted an appeal, which has been perfected, and the chancellor's decree assigned as error.

The case set up in the bill is that complainant and defendant were married in Blount county, in 1919, and there resided until 1932, when they removed to Polk county; that complainant became *non compos mentis* in 1927, and was committed to the Eastern State Hospital for the Insane at the instance of her father, but while she was still insane the defendant took her from the hospital and they again lived as man and wife for several months, but that she was again committed to the asylum in 1928, where she remained for several months, but that defendant, while she was still *non compos mentis,* later removed her from the hospital, and to Polk county, where they resided as husband and wife until September 7, 1934, but that during all this time complainant was insane and unable to be left without an attendant; that on September 7, 1934, notwithstanding her mental incapacity, her husband, the defendant, filed a bill against her for divorce, in Polk county, alleging as the sole ground thereof that complainant was guilty of adultery with one Blain Cochran on September 1, 1934; that the defendant had his brother come to his home and transport complainant in an automobile to Benton, where process and a copy of the divorce bill was served upon her, and that the defendant himself pointed out to the deputy sheriff having such process the identity of complainant, and stated to him that the man with her was her paramour; that upon the trial of said divorce cause the defendant produced in evidence a letter purporting to be written to "Dear Blain" and signed "Mary," and which letter expressed

affection for the addressee, and that defendant represented this as a letter from complainant to the said Cochran, although complainant was insane, and in fact could not write at all, and that the said letter was a fraud, and constituted a part of the fraudulent divorce proceeding; that after process was served upon complainant, as aforesaid, defendant's brother proceeded to take complainant to her father's home in Blount county, and let her out of the car near her father's home, and left with her a small package of clothing, but did not give her the copy of the divorce bill or subpoena to answer.

Complainant alleges that a *pro confesso* was taken against her in said divorce proceeding, and final decree obtained against her; that she was not guilty of adultery with Blain Cochran; that the allegations in the bill filed against her were false and fraudulent, were concealed from her father, though defendant knew her to be wholly insane at the time, and that the entire proceeding was a fraud in fact, and a fraud upon the court; and it is prayed that said divorce decree be decreed void for fraud, and set aside.

It is insisted, in behalf of the defendant, that this is a bill to review a divorce decree, in violation of the statute mentioned. This is a mistaken view. The bill does not seek to review the divorce decree. It is a direct attack upon such decree, for fraud. The statute referred to forbids the review of a divorce decree, for errors, except upon appeal. This bill concedes that there are no errors upon the face of the record of the divorce proceedings, and seeks to go behind the decree, and show that the entire proceeding was a fraud in fact, and a fraud upon the court.

In *Wills* v. *Wills*, 104 Tenn., 382, 383, 58 S. W., 301, 303,

this court held that a divorce decree could not be reviewed by a writ of error *coram nobis,* but said: ''This does not leave the aggrieved party without remedy. The power and jurisdiction of the chancery court to set aside decrees obtained by fraud, even in cases of divorce, has been recognized and enforced in a number of cases involving divorces in foreign courts.''

Learned counsel for the defendant say that this expression of the court is *dictum.* This may be true. Nevertheless, if a divorce decree which was obtained by fraud, being regular upon its face, could not be impeached for fraud, it could not be set aside by any proceeding. Courts would be left utterly helpless to relieve against such fraud. The sacred marital relation, in which the public has an interest, could thus be severed through a fraudulent decree, and the injured and society left without a remedy. Such position is wholly untenable; the statute does not leave our courts of equity impotent as to fraudulent divorce decrees, which may be attacked for fraud, as may any other fraudulent decree. The chancellor correctly so held, and his decree will be affirmed.